**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eugene Robert GAY, Jr., Defendant-Appellant.**

**No. 79–1381.**

United States Court of Appeals, Tenth Circuit.

June 17, 1980.

---

6. *See* notes 1–5, *supra.*

Susan R. Roberts, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with her on brief), for plaintiff-appellee.

Louis A. Weltzer, Denver, Colo. (David L. Worstell, Denver, Colo., with him on brief), of Weltzer & Worstell, Denver, Colo., for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

Eugene Robert Gay was charged with taking money by force, violence and intimidation from an employee of the federally insured Silver State Savings and Loan Association, Aurora, Colorado, and the further allegation was that in so doing Gay put in jeopardy the lives of employees of the association by the use of a hand gun, all in violation of 18 U.S.C. § 2113(a) and (d). A jury convicted Gay of the crime thus charged, and he now appeals the conviction and the twenty-year sentence imposed thereon. None of the grounds urged warrant a reversal, and we therefore affirm.

Gay escaped from a federal correctional institution in Florida. He then came to Colorado and the F.B.I. was alerted to Gay's presence in the Denver, Colorado area. Specifically, the F.B.I. was advised that Gay would pick up his automobile from a local Denver garage at noon on January 4, 1979. F.B.I. agents proceeded to the garage, intending to arrest Gay when he arrived to pick up his automobile. We are told that the agents were armed with an arrest warrant for Gay, on charges that he was a federal escapee. En route to the garage, the F.B.I. agents heard over their car radio that the Silver State Savings and Loan Association in Aurora, Colorado had just been robbed. The broadcasted description of the robber matched the description of Gay.

Gay appeared at the garage at the appointed time and was promptly placed under arrest by the F.B.I. agents. The agents

searched Gay's person for weapons. No weapons were found, but in the course of the search the F.B.I. agents found considerable currency on Gay's person, which they promptly seized. The currency seized included bait money taken in the robbery of Silver State. Employees of Silver State were later shown six photographs, and Gay was identified as the robber. At trial, several witnesses identified Gay as the one who robbed Silver State. It was on this general state of the record that Gay was convicted.

The first ground for reversal is that the trial court erred in denying a defense motion to suppress the use at trial of the currency taken from Gay's person. Counsel concedes that Gay's arrest as an escapee was lawful, and that incident thereto the arresting officers had a right to search Gay's person for weapons. Counsel argues, however, that the F.B.I. had no right to seize the currency found on Gay's person during the search for weapons. We disagree. Under the described circumstances, the agents had a right to make a full search of Gay's person.

*Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), relied on by Gay, in fact supports the Government's position. In *Chimel* the Supreme Court at pp. 762–763, 89 S.Ct. at p. 2040 declared as follows:

A similar analysis underlies the "search incident to arrest" principle, and marks its proper extent. When arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. *In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.* And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. (Emphasis added.)

In line with *Chimel,* the Tenth Circuit in *United States v. Simpson,* 453 F.2d 1028 (10th Cir.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972), stated:

The general rule is that incident to a lawful arrest, a search without a warrant may be made of portable personal effects in the immediate possession of the person arrested. The discovery during a search of a totally unrelated object which provides grounds for prosecution of a crime different than that which the accused was arrested for does not render the search invalid. 453 F.2d at 1031.

The fact that Gay's wallet was searched and certain currency contained therein was seized does not make the search unlawful. Where the arrest itself is lawful, we have on several occasions held that a search of the arrestee's wallet is also valid, *United States v. Gardner,* 480 F.2d 929 (10th Cir.), *cert. denied,* 414 U.S. 977, 94 S.Ct. 297, 38 L.Ed.2d 220 (1973) and *United states v. Simpson,* 453 F.2d 1028 (10th Cir.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972). In sum, the seizure of the currency from Gay's person was proper. Having determined that the seizure of the currency was lawful, we have thereby disposed of the additional argument that the subsequent seizure of Gay's shirt was the fruit of the poisonous tree.

Gay contends that his Sixth Amendment right to counsel was violated when F.B.I. agents exhibited six photographs to an employee of the Silver State Savings and Loan Association. The employee was asked if any one of the photographs portrayed the robber. She answered in the affirmative and identified a photograph of Gay. The challenge to this procedure is that Gay's counsel was not present when such showing, and identification, occurred. This argument has been rejected in such cases as *United States v. Ash,* 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1972); *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); and *McGee v. United States,* 402 F.2d 434, 436 (10th Cir. 1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969).

A security camera located in the offices of the Silver State Savings and Loan Association was triggered during the course of the robbery, and the photographs thus taken were received into evidence at trial. Such were identified by several witnesses as being accurate portrayals of the robbery. Sequential photographs of bank robberies taken by surveillance cameras have been received into evidence if they accurately represent the commission of a crime. *United States v. Neal*, 527 F.2d 63 (8th Cir. 1975), *cert. denied in Robinson v. United States*, 429 U.S. 845, 97 S.Ct. 125, 50 L.Ed.2d 116 (1976) and *Mikus v. United States*, 433 F.2d 719 (2nd Cir. 1970).

The evidence is in our view amply sufficient to support the conviction. It is argued that there is no evidence to support the allegation that the robber used a hand gun. It is true that no hand gun was found on Gay's person when he was arrested about an hour and a half after the crime. But that fact does not resolve the matter. Several employees of the savings and loan association, as well as a customer in the building at the time of the robbery, not only identified Gay as the robber, but also testified that he displayed a hand gun which he used in order to obtain speedy compliance with his demands. When a gun is used in a bank robbery and displayed in a menacing fashion, and there is no evidence that the gun was not loaded, a jury may, with propriety, infer that the gun was loaded. *United States v. Moore*, 487 F.2d 414 (10th Cir. 1973) and *United States v. Waters*, 461 F.2d 248 (10th Cir.), *cert. denied, Robins v. United States*, 409 U.S. 880, 93 S.Ct. 207, 34 L.Ed.2d 134 (1972).

Objection was made to an instruction which advised the jury that a person who has the apparent present ability to inflict bodily harm or injury to another person may be found guilty of having committed an assault. The precise objection was to the use of the word "apparent." It is suggested that the Government must prove as an essential element of its case that Gay had *actual* ability to inflict injury. We disagree. There was no evidence that the gun was unloaded. As above noted, in such circumstance the jury may with propriety infer that the gun was loaded. The instruction given is in accord with *United States v. Shannahan*, 605 F.2d 539 (10th Cir. 1979).

 A few days before trial, defense counsel, who does not represent Gay on appeal, sought a transcript of testimony given in a companion proceeding. Such transcript was obtained by order of court. Counsel then sought a continuance on the ground that he needed time to study the impact of such testimony. The record reveals that he had some three to four days to study the transcript before Gay's trial commenced. Under such circumstances, the trial judge's denial of the motion for a continuance was well within his discretion.

Judgment affirmed.